## WILSON *v.* CORBIN.

Where property is devised to children or grandchildren, to be divided on the eldest arriving at the age of twenty-one years, it is to be distributed among all those who are then living and entitled to take under that description of persons referred to in the bequest.

The general rule relative to cases of this kind is, that when legacies are given to a descriptive class of persons, payable at a future period, as to the children of B., when the youngest shall attain twenty-one, or to be divided among them on the death of C., any child who can entitle himself under the description at the time of distributing the fund, may claim part of it. And this rule applies as well to children living at the period of distribution, though not born till after the death of the testator, as those born before, and living at the happening of the event.

So also in bequests to children, or other persons who are designated as a class, the Court always endeavours to construe the period of distribution as late as it can, in order to include the greatest number of persons within the testator's bounty.

When a legacy is given to the children of A., when they arrive at the age of twenty-one years, it must be distributed among the children *in esse* at the time the eldest attains such age.

Where a testator provided in his will, on his eldest grandchild arriving at the age of twenty-one, his estate should be divided among his grandchildren then living: *Held*, that *those living* when the first grandchild arrived at the age of twenty-one years, were the legatees entitled to receive the legacy.

*March* 14. THIS was a bill in equity, brought by Janet Wilson, James H. Cowper, and Thomas Cadwalader, surviving executors, devisees, and legatees in trust named in the last will and testament of James . Hamilton, deceased, against Isabella Hamilton Corbin, the eldest grandchild of the said testator, Francis P. Corbin, her trustee, and Henry D. Gilpin, Esq., her attorney in fact, &c. The bill was friendly in its character, and seemed to be brought simply to obtain instruction from the Court, relative to the manner in which the plaintiffs should perform certain duties enjoined upon them by said will, and the time when it will be proper for them to carry those provisions into effect.

The plaintiffs set forth that James Hamilton died on or about the 12th of April, 1829, seised and possessed of considerable real and personal property in this state and in Georgia, having first made his last will and testament, dated the 28th day of July, 1828, and that the same was duly proved since his decease. That the said testator devised and bequeathed to the complainants, and one Woodruff, who is since deceased, and the survivor of them, all his real and personal property of every description whatsoever, and wheresoever situate, together with the rents, issues, income, and profits thereof, in trust, nevertheless, that they, the survivor or sur-

vivors of them, &c., should or might sell, assign, transfer, or dispose of his property, or such parts or portions thereof, as they or a majority of them should, from time to time, judge expedient or necessary to carry into effect the several bequests and objects of his last will and testament.

The bill, after referring to the manner in which the plaintiffs have in part executed the trusts reposed in them, proceeds and sets forth those bequests at length, on which the various questions arise which are now submitted to the Court for their decision, the first of which is as follows: "I desire that my dwelling-house where I reside, in Walnut street, No. 260, city of Philadelphia aforesaid, with all and singular the appurtenances of every description now in use, or thereunto belonging, may, immediately on my decease, be freely held, occupied, and enjoyed by my said niece during her life, at the same time wishing and expecting that, under this disposition of it, my son, with his wife, should he marry with the approbation of my said trustees, or a majority of them, may, if he wish, reside with her; and also my daughter Agnes and her children, should she be disposed to do so. But should it so happen that such an arrangement of my house, with the appurtenances, cannot be satisfactorily made, then my said trustees are authorized to dispose of the same to the best advantage, save and except that my plate shall be reserved and kept for my grandchild who shall first attain the age of twenty-one years; but should none of them reach that age, then I desire the same to be sold. Also, should any of my grandchildren lose their parents before arriving at age, I desire my executors to make suitable provision for their maintenance and education."

The bill also sets forth a further clause in the will, which is as follows: "Also, it is my wish and desire that all my grandchildren should have the whole of my estate not otherwise disposed of by this will, equally between them, that on my eldest grandchild arriving at the age of twenty-one, my trustees and executors do make a reasonable valuation of my estate, and give such grandchild his or her proportion according to such valuation, and the number of grandchildren *then living;* that when the second grandchild shall arrive at the age of twenty-one, they shall give to such grandchild his or her proportion according to the same, or a new valuation then to be made if thought necessary; and so on in succession until a final division shall be made to the last grandchild; and when the last grandchild shall arrive at full age, such an arrangement shall take place, if practicable, as will place all my grandchildren on an

equal footing with regard to my estate, leaving it to my trustees and executors to adopt the most eligible plan for the purpose. And it is my further wish, that when the grandchild who may be thus entitled to a share is a female, her portion shall, in the event of her marriage either before or after her coming of age, be secured to her sole and separate use."

There was a devise over in case there should be no grandchild who could take under the will, and various other bequests. It was averred in the bill that the debts of the deceased were all paid, and that they have from time to time discharged the several annuities in said will bequeathed, so far as they have accrued and become payable to the respective annuitants, &c. That they have from time to time made settlements of their accounts as such executors, which have been confirmed.

It was further stated in the bill that the testator left issue living at his death, only one son, who has no issue, and has never been married, and only one daughter, Agnes Rebecca, the wife of the said defendant Francis P. Corbin, and mother of said defendant, Isabella H. Corbin. The said Isabella arrived at the age of twenty-one years on the 21st day of October last. There then were, and are now, only two other grandchildren of the testator, both of them children of the said Agnes Rebecca Corbin, born since testator's death, namely Elizabeth T., now aged 18 years or thereabouts, and Richard, now aged 12 years or thereabouts. It was also averred by the plaintiffs, that in obedience to successive decrees in a certain cause in equity heretofore instituted and still pending in the Court of Common Pleas of Philadelphia county, the complainants, or some of them, have from time to time made certain payments to the said Francis P. Corbin, of moneys thereby directed to be paid to him for the maintenance, education, and outfit of the said Isabella during her minority, and of the said Elizabeth T. Corbin and Richard Corbin; a schedule of which was annexed to the bill, stating the various sums thus paid; and the plaintiffs claimed to charge the share of the said Isabella with interest at the rate of five per cent. per annum. The complainants further stated, that the said Isabella, shortly after attaining her age of twenty-one years, sealed and delivered a certain declaration of trust, and letter of attorney, in which she desired the valuation and division of the estate of the testator should be made in pursuance of the requisitions of the will, and that the plate, and her proportion of all the property to which she is entitled under said will, should be delivered and paid to her, and that a full and complete

2 G

settlement of her share of the estate and property should be made, and her share secured to her sole and separate use; and for that purpose she had transferred, assigned, and conveyed to the said Francis P. Corbin in trust for her sole and separate use during her life, &c.; and had also thereby constituted the said Henry D. Gilpin, Esq., her attorney, fully to act for her in the matters and things necessary to be done by her, pursuant to said last will and testament.

The bill also stated that the said Francis P. Corbin, and the said Isabella, acting by her said attorney, have called upon and required the complainants to proceed to make a valuation and division, that, so far as may concern the said Isabella's share of the said testator's estate, it may be a final one, and a present absolute allotment of one-third in value of the whole of the said estate as her share thereof; and have required the said plate to be presently and absolutely surrendered, as having become vested in possession in the said Isabella when she attained the age of twenty-one years aforesaid.

The complainants also state, that, with the approbation of the defendants, they have reserved and set apart a fund sufficient to secure the payment of the annuities and contingent or other charges and claims upon the estate of the testator. With the intent and purpose to make, as far as may now be practicable, the valuation and division of the testator's estate directed by his said last will and testament, they have valued all the remaining parts of the estate, both real and personal, wheresoever the same is, a schedule of which has been made. They then asked, in the bill, direction on the four following points or propositions: "First, whether the possible future existence of either grandchildren, or another grandchild of the said testator than the three above named, is a contingency which the complainants have any authority or discretion to take into consideration in making the valuation, division, and allotments directed as aforesaid by said last will and testament; and if at liberty so to do, then, secondly, to what extent, and in what manner, any discretion conferred upon them by the said last will and testament can or ought to be now exercised, with a view to the contingency of the future existence of such grandchildren; thirdly, whether during the lifetime of the said Janet Wilson, and before the occurrence of the contingency provided for in the said last will and testament, for the sale of the said house in Walnut street, the said plate is to be deemed to belong in possession to the said Isabella; and fourthly, what rate of interest should, for the purpose of equalization, be charged upon

the items specified in a certain schedule annexed to the bill." The complainants say, they are not certainly advised what their duty as trustees requires them to do. That under each head they are willing and prepared to do whatsoever may be reasonably required of them, as soon as known; that they have applied to the defendants in a friendly way to obtain legal advice and direction in relation thereto, but their applications have been rejected by the defendants, who allege that those propositions involve no real doubt or difficulty, or sufficiently serious to render such advice necessary or requisite.

To this bill the defendants filed an answer, in which they admitted all the facts set forth; but deny that either or any of the four propositions or questions propounded by the complainants in their bill do arise in the premises, and that they can safely execute their duties as trustees therein, without the aid or decision of a Court of Equity, because they say that by the express terms and provisions of said last will and testament, and upon the facts and occurrences in the said bill of complaint, and admitted by the defendants, the said Isabella Corbin, being the eldest grandchild of the said testator, was, on arriving at the age of twenty-one, entitled to receive her proportion of the whole of the testator's estate not otherwise disposed of in said will, according to the valuation made pursuant to the provisions thereof, and the number of grandchildren of the testator *then living*, which proportion is one-third part of the whole of the testator's estate not so disposed of. The defendants contend that the said Isabella is also entitled to the immediate possession of the plate mentioned in the first clause of the will above recited, which belonged to the testator. It is also alleged in the answer that the interest to be charged on the money advanced to the said Isabella, for the purposes stated in the bill, ought not to exceed the rate of five per cent. It was also admitted by the answer that they did refuse and reject the application of the complainants, as set forth in the bill.

The cause was submitted to the Court, on arguments in writing, by Messrs. *Cadwalader* and *J. M. Reed* for the plaintiffs, and *H. D. Gilpin* for the defendants; and was heard by Judges KING, CAMPBELL, and PARSONS.

The following opinion of the Court was delivered by

PARSONS, Judge.——The main and important question for our decision is, When is the distribution among the grandchildren to take place, and among whom is the property to be divided? In our opinion, independent of authority on the construction of bequests like

those contained in the will now before us, the testator in clear and intelligible language has designated the period when it is to be done. This bequest is in the following words : " Also, it is my wish and desire, that all my grandchildren should have the whole of my estate not otherwise disposed of by this will, equally between them ; that, on my eldest grandchild arriving at the age of twenty-one, my trustees and executors do make a reasonable valuation of my estate, and give to such grandchild his or her proportion, according to such valuation and the number of grandchildren *then living*." By this clause the time of division is clearly fixed. It is to be, when the eldest grandchild arrives at the age of 21 years. Among whom of his grandchildren is division to be made ? *Those then living*, is the clear language of the will. But it is argued that the testator declares that his desire is, that *all* his grandchildren should have the whole of his estate. Such undoubtedly are the words of the testator in the first part of this clause in the will, yet *all* his grandchildren, mean *all then living* at the time the eldest arrives at the age of twenty-one. The words at the close of the sentence " *the number of grandchildren then living*," gives a clear definition of the first expression in the bequest, and those *only*, who are living at the time the eldest arrives at the age of twenty-one, are meant as *all* his grandchildren who were to partake of his bounty. It is further directed, when the " second grandchild shall arrive at the age of twenty-one," the trustees are to give to such grandchild his or her proportion, according to the same valuation, or a new one, and " so on in succession until a final division shall be made to the last grandchild." What last grandchild is here meant ? The last grandchild *living*, at the time the eldest arrives at the age of twenty-one years. No other construction, in my opinion, can be given to this clause in the will, without a disregard to the plain language used, and the manifest intention of the testator.

At the time of the making of this will, Mr. Hamilton had but one grandchild, and that was Isabella Corbin, and she was but about one year and three months old. His son was then, and is still, unmarried. He well knew, when making his will, and at the time of his death, that near twenty years must roll by before there could be any division of his property under this clause in the will. Can we for one moment suppose that he intended that it should be held by the trustees for twenty years more, or until the death of his son and daughter ? In my opinion, nothing can be more clear than that such *was not* his intention, and that he has given plain and positive instructions to his trustees when the division was to

take place, and who were the grandchildren he desired should have his property. The valuation is to be made when the eldest arrives at twenty-one, and those of his grandchildren *then living*, are the legatees designated as those entitled to receive it. If we take simply the *will* for our guide, without reference to authority, it appears to me no one can doubt that this is the correct construction of it.

But if we look to the authorities, both in England and in this country, no principle can be better settled than the one which must be our guide in giving a construction to this legacy.

The general rule laid down by Roper, in his Treatise on Legacies, 1 vol. 71, is this : " that when legacies are given to a descript class of individuals, payable at a future period ; as to the children of B., when the youngest shall attain twenty-one, or to be divided among them on the death of C., any child who can entitle himself under the description at the time of distributing the fund, may claim a part of it, viz. as well those children living at the period of distribution, though not born till after the testator's death, as those born before, and living at, the happening of that event." And there is no doubt that, in bequests to children or other persons who are designated as a class, the Court always endeavours to construe the period of distribution as late as it can, in order to include the greatest number of persons within the testator's bounty. And the class of cases under these rules may be embraced under three heads : First, where there is simply a general devise to children or other persons, as a class, in which case it comprehends all persons answering that description at the time of the testator's death. Such was the case of Hill *v.* Chapman, 3 Bro. C. R. 391. Second, where there is a previous life estate, in which all the persons answering the description at the extinction of that life are included : Baldwin *v.* Carver, Cow. 209. The third class are those cases in which, as in the present, the bequest is to children or grandchildren (generally), payable at a certain period (usually twenty-one years, or marriage), in which case all children are let in who came into *esse* before the first child attains the period appointed. Under this last head the cases are numerous, and I think conclusively settle the question which arises upon the construction we are disposed to put upon the bequest in the present cause.

The first and leading case on this point is Ellison *v.* Airey, 1 Vesey, Sr. 111, in which Lord Hardwicke has laid down an intelligible rule, which seems to have controlled the English Court of Chancery in all subsequent decisions. The case was this : A wo-

man devised to the son and two daughters of her nephew, Francis Ellison, £10 apiece; then devises £300 to Elizabeth Paxton, to be paid at her age of twenty-one, or marriage; but, if she died before twenty-one or marriage, then to the younger children of her nephew Francis Ellison, equally to be divided to and among them. Some of the younger children were born before the making of the will, and some after the death of the testatrix. The Chancellor in delivering his opinion said, " The Court generally takes it, that there ought to be a legatee in being : and therefore will not construe a will to extend to persons not in being, unless the testator shows his intention to be such, by words in the will; which is the rule at common law as to contingent devises and remainders, and this to avoid suspending; which always tends to make property uncertain, and to the inconvenience of making more divisions than the testator meant." After discussing the question, the Chancellor says, "When is this legacy given ? At the death of Elizabeth before twenty-one or marriage. What is to be done with it ? To be divided equally. When ? That is not specified; but the natural way of thinking is that she intended it should be divided when it vests. This construction answers the words of the will and the intention, avoids all inconveniences, and fixes a proper period."

With equal propriety may we put the inquiry as to the will of Mr. Hamilton : When is this legacy given ? When the eldest grandchild arrives at the age of twenty one. What is to be done with it ? To be divided equally among his grandchildren. When ? When the eldest arrives at the age of twenty-one, because it is so specified. And the natural way of thinking is that the testator thus intended that it should be divided when it vested with the *right of immediate possession.* The same principle is recognised in Gilmore *v.* Severn, 1 Bro. C. R. 582 ; in the case of Congreve *v.* Congreve, same book, 530, this doctrine is also assented to, and numerous cases are cited in the notes. In the case of Andrews *v.* Partington, 3 Brown C. R. 402, the Lord Chancellor said, where a time was pointed out, as where a legacy is given to all the children of A. when they shall attain twenty-one, it was too late to say that the time so pointed out shall not regulate among what children the distribution shall be made. *It must be among the children in esse at the time the eldest attains such age.* So in the case of Hughes *v.* Hughes, the same book, pages 353, 434, it is ruled, where the period of division is marked out by the testator, only children *in esse* at that period can take. In the case of Pulsford *v.* Hunter, the same book, 416, it was ruled, where a legacy of a sum to be divided among children

was given, all those born before the time of division take. The case of Hill v. Chapman, 1 Vesey, 407, is to the same effect; and Lord Thurlow remarks that the case of Ellison v. Airey *cannot now be shaken.* So in the case of Hoste v. Pratt, 3 Vesey, 730, it was held in a case of trust by will for all the children of A. when and as they shall severally attain sixteen, with a direction for maintenance; those born after the eldest attained sixteen, were excluded. See also Middleton v. Messinger, 5 Ves. 136.

In the case of Godfrey v. Davis, 6 Ves. Jr. p. 43, where an annuity was bequeathed after annuitant's death to the eldest child of A., no child living at the death of A., but one born after, the Master of the Rolls said, that it was clearly established, that where the testator gives any legacy or benefit to any person, not as a *persona designata,* but under a qualification and description at any particular time, the person answering that description *at that time,* is the person to claim; and if there are any persons answering that description, they are not to wait to see whether any other persons shall come *in esse,* but it is to be divided among those capable of taking, when by the terms of the will the testator intended the property to vest in possession.

Not unlike the present case, was that of Whitehead v. St. John, 10 Ves. 152, where there was a bequest to the children of A. born or to be born, and interest, for maintenance until such children should respectively attain twenty-one, or marriage, when and as they should attain the respective ages of twenty-one, to pay them in equal shares. There were four children—two had reached twenty-one, and one was married. They petitioned for the payment of their respective fourth shares of the trust fund. Lord Eldon in pronouncing judgment said, "I cannot take this case out of the authorities; therefore, the shares vesting when the first child attains the age of twenty-one, and there being four children, the order must be made on that principle."

Equally strong is the case of Gilbert v. Boorman, 11 Ves. 238, where a residue was bequeathed to the plaintiff by name, and all the other children hereafter to be born of a child of the testator, at their respective ages of twenty-one. The plaintiff having attained that age, filed the bill. The Master of the Rolls made the decree; observing that children born afterwards *are excluded* of necessity, when a partial distribution is to take place.

In the case of Curtis v. Curtis, 6 Madd. 17, where there was an annuity for the father for life, of part of the dividends, and remainder as to the whole dividends subject to the father's annuity; gift

to the children when they attained the age of twenty-one, is a gift to *all living when the* eldest attains twenty-one. The principle which we are now considering, is equally well supported in the case of Walker *v.* Shore, 15 Ves. 122, and Ayton *v.* Ayton, 1 Cox, 327.

The doctrine which we laid down at the commencement of our remarks in relation to authority, is equally well settled in this country. It was ruled by Chancellor Walworth, Jenkins *v.* Freyer, 4 Paige, 47, that, where a legacy is given to a class of individuals in general terms, " as to the children of A.," and no period is fixed for the distribution of the legacy, it is to be considered as due at the death of the testator; and none but children who were born or begotten previous to that time are entitled to share in the legacy.

But where, by the will of the testator, there is a postponement of the division of the legacy given to a class of individuals until a period subsequent to his death, every one who answers the description, so as to come within that class, at the time which is fixed by the testator for the division, will be entitled to a share, although not *in esse* at the death of the testator, unless there is something in the will to show that the testator intended such of the class as would answer the description when the will took effect by his death : Cole *v.* Crayon, 1 Hill, S. C. Chan. R. 323. These principles were fully discussed and adopted, in Myers *v.* Myers, 2 M'Cord, 256, and Sweeton *v.* Legare, 2 M'Cord, 445. It seems to us a waste of time to produce further authorities to support the correctness of our conclusion in relation to the construction of this will ; therefore I shall cite no more.

But it has been suggested by the counsel for the plaintiffs, that the position assumed by the defendants in their answer is in conflict with the ruling by this Court in the case of Corbin *v.* Wilson, reported in 2 Ashm. 178, when giving a construction to this will. Yet I apprehend a more careful examination of that decision will satisfy any one that the question now decided was *not the one* before the Court ; nor ought a casual remark made by the President Judge, when delivering his opinion, to be understood as deciding this question. The main point in that case was, as to the character of this legacy, whether it was vested or contingent. To show this, I must be pardoned for making a few extracts from his opinion. After giving a brief outline of the state of the controversy, he says, " the great question of the cause is, whether the legacies to the plaintiffs are vested or contingent ?" Then, after speaking of the various kinds of legacies, vested and contingent, and by

what rules their real nature is to be ascertained, he remarks: "When a legacy is given to a person to be paid, or payable at or when he shall attain the age of twenty-one, or at a future definite period, the interest in the legacy shall be vested in the legatee immediately upon the testator's death, as *debitum in presenti solvendum in futuro*, the time being only annexed to the payment, and not the gift, of the legacy." Then, after citing numerous authorities to sustain this position, and fully discussing the subject, he further remarks: "But the result of the fullest consideration is an opinion, that the legacies given to his grandchildren in the will of James Hamilton are vested in present interest, though postponed as to enjoyment, and not, as has been insisted by the defendants, contingent and dependent on the legatees arriving at the age of twenty-one years." And then concludes this branch of the case by declaring that it was the judgment of the Court that these legacies are vested in interest, though postponed as to enjoyment, and therefore, that an order for allowance and maintenance was legally admissible and proper. The remaining question for the Court's determination at that time was whether they had jurisdiction of the subject, which was ruled affirmatively. Hence, the question *who* the legatees were, to receive their portion, and what number formed the class to take, did not arise on that occasion. This subject as to the period of distribution, and the persons that might be entitled to take under the description of grandchildren, was referred to in argument by counsel, to prove that the legacies were contingent and not vested. Mr. *Reed* is reported to have said, "Who the grandchildren of Mr. Hamilton are, can never be determined until the death of both the progenitors from whom they are to issue." Hence, it was argued that the legacies must be contingent, and it was used as an argument against granting the allowance. Mr. *Ingersoll* in his argument contends that could make no difference in deciding upon the character of the legacy; that it was equally vested, although the distribution might be postponed, and could not be divided when the eldest arrived at the age of twenty-one. It was when noticing these arguments, that the President Judge refers to this point, and clearly shows that no such reasons should prevent the Court from deciding upon the nature of the legacy according to the established rules for the construction of wills. I am fully authorized to say that he did not design to express an opinion upon the question presented by the present bill and answer, but entirely concurs with us in the conclusion already expressed; that the dis-

tribution should be made among the grandchildren living at the time the eldest arrives at the age of twenty-one.

What was said on the hearing of that cause by counsel, was by way of argument to illustrate the question then under discussion; and the observations by the learned President were made entirely by way of comment on those arguments, merely to show that there was no reason arising from them, which could prevent the natural conclusion that seemed necessarily to arise in the mind relative to the main question determined. It was not the point then considered nor decided; nor have we a right to infer that a different opinion from that now given would have been expressed, had the authorities we have cited been presented to the Court. Not one of these numerous cases was referred to, either by the counsel or the Court, and therefore no opinion was given on them, or the proposition now decided.

Therefore it may with propriety be said, the question was not then determined as to *when* the distribution was to be made, nor *who* were the distributees entitled to take the legacy.

The next point necessary now to be determined is, whether Isabella is entitled to the plate left by her grandfather? That she is, no one can doubt. But when is she to have the possession of it? According to the ruling of this Court in the case of Woodruff et al. *v.* Wilson, 2 Ashm. 278, on the construction of the bequest under which the plate is given, it would seem she is not entitled to the possession of the plate until the death of Miss Janet Wilson. But we are told that Miss Wilson is willing that Isabella H. Corbin should have it now. On her expressing such consent in writing, the decree may be drawn awarding it to Isabella.

The remaining question is as to the interest which ought to be charged on the various advances made to Miss Corbin and her sister and brother. We are of the opinion that five per cent. would be a fair rate, under all the circumstances of the case in which the various questions arising on this estate have been presented to the Court and therefore decree that as the rate to be fixed.

It is believed the above opinion disposes of all the matters submitted under this bill, and that nothing is now ruled in conflict with our former opinions.